**AERONAUTICAL INDUSTRIAL DISTRICT LODGE 776, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO**

**v.**

**GENERAL DYNAMICS CORPORATION.**

**Civ. A. No. 4–90–411–K.**

United States District Court, N.D. Texas, Fort Worth Division.

June 13, 1990.

---

Janice Anne Sims Schattman, San Antonio, Tex., James Morton Whitton, James Roddy Tanner, Watson, Ice, McGee, Morgan & Hughes, Fort Worth, Tex., for plaintiff.

Bonnie Von Roeder, Gary L. Ingram, Law, Snakard & Gambill, Fort Worth, Tex., John F. Guest, Dennis J. Morikawa, Eric A. Sisko, Morgan, Lewis & Bockius, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

BELEW, District Judge.

Pending before the Court is the Motion for Preliminary Injunction filed by the Plaintiffs. After careful consideration of the respective briefs and the applicable law, it is the opinion of this Court that the Motion should be denied.

## I. FACTS

The Fort Worth Division of General Dynamics (the Defendant) is currently attempting to establish a preventative drug testing program for certain narrowly defined categories of employees: safety-sensitive, security-sensitive, and senior management positions. The preventative drug testing is the last step in a four step company plan designed to lessen the deleterious effects that drug and alcohol abuse has on the company's employees personally, their general safety on the job, and the products which they produce. The plan as a whole has four steps set out as follows: (1) a statement of the Company's policy against substance abuse, (2) effective rehabilitation programs for employees who voluntarily seek assistance with substance abuse problems, (3) discipline of employees who violate the policy, and (4) effective monitoring of substance abuse through supervisory training, suspicion-based testing, and unannounced periodic testing (preventative testing). This plan has been completely implemented in seven of the Defendant's Divisions; the Defendants are currently seeking to have its Fort Worth Division follow in kind.

In an effort to implement the entire plan in its Fort Worth Division, the Defendant has negotiated with the Unions (the Plaintiffs) since late 1988. The parties are, it appears, in agreement on all elements of the program except the fourth step, preventative testing. The Plaintiffs are apparently offended by the notion of random drug testing in that employees who have not demonstrated any symptom of substance abuse will be made to give up a bodily fluid for purposes of chemical analysis. The parties did, however, agree on the overall policy against substance abuse, the need for supervisory training, procedures for sample collection and sample testing, levels at which samples will be considered positive, procedures for maintaining the confidentiality of information disclosed during the testing process, and random follow-up testing of individuals who initially test positive.

The parties do not dispute the fact that the instant conflict is one which should be arbitrated. The Plaintiffs have in fact filed two grievances concerning the dispute which will be arbitrated in the coming months. This case has been laid at the Court's doorstep because of the Defen-

dant's decision to unilaterally implement its preventative testing, hence, the supposed need for this Court to maintain the status quo until the grievances can be fully arbitrated.

## II. JURISDICTION

█ The Norris–LaGuardia Act provides that this Court "does not have jurisdiction to issue a temporary restraining order or a preliminary or permanent injunction in a case involving or growing out of a labor dispute" except in extraordinary circumstances. 29 U.S.C. § 113(c); *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976); *Gulf Coast Indus. Workers Union v. Exxon,* 712 F.2d 161 (5th Cir.1983). The exception to the general prohibition against the issuance of a TRO, Preliminary or Permanent Injunction is found in the 5th Circuit's *Gulf Coast* opinion, where the rule is stated as follows:

> That rule appears to be that only where the arbitration process to which the parties have agreed will be frustrated or rendered nugatory by one party's self-help measure will use of that measure be enjoined and only then when the injunction is otherwise warranted under ordinary principles of equity.

In a case similar to the one at bar, the Fifth Circuit has very recently reiterated the foregoing rule as follows:

> Such injunctions may issue only where necessary to preserve the jurisdiction of the grievance procedure, **or where a disruption of the status quo would result in irreparable injury of such magnitude that it would render any subsequent decision meaningless.** *Allied Pilots Ass'n v. American Airlines, Inc.,* 898 F.2d 462, 465 (5th Cir.1990) (quoting *International B'hd of Teamsters v. Southwest Airlines,* 875 F.2d 1129, at 1136 [5th Cir.] (1989) (en banc)). (emphasis added)

The parties agree that the Norris–LaGuardia Act denies this Court jurisdiction to enter a preliminary injunction unless it is shown, and the Court so finds, that the harm which will follow the imposition of the Defendant's preventative testing policy is of such a grave nature as to render meaningless any subsequent arbitrator's decision in favor of the Plaintiff. If the Court finds that the threatened harm will eviscerate the subsequent arbitration process, then the Plaintiff must demonstrate that a preliminary injunction is warranted by adequate proof of the traditional principles of equity. *Mississippi Power & Light v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir.1985).

*Irreparable Harm*

█ Of paramount importance to the determination of the foregoing issue is the meaning of irreparable injury or harm. Traditionally, irreparable injury means not simply any injury resulting from a breach of contract that would not be fully redressed by an arbitral award, but rather injury so irreparable that a decision of the arbitration board in the union's favor would be but an empty victory. *See Local Lodge No. 1266 etc. v. Panoramic Corp.,* 668 F.2d 276, 285 (7th Cir.1981). For example, courts have upheld status quo injunctions for such things as: a plant closing, termination of business, relocation of plant, and partial liquidation of the business. *See id.* at 286. These situations entail permanent loss of jobs which cannot be remedied by damages thereby supplanting the arbitration process as a whole.

█ In the case at bar, the Plaintiffs argue that if the Defendant is allowed to administer the preventative testing, individuals who test positive will be irrevocably labelled drug or alcohol dependent and thereby be humiliated. Additionally, those employees who do not test positive will suffer an irretrievable invasion of their privacy. The Plaintiff does admit that the arbitrator could provide such remedies as: finding the preventative testing to be a breach of the collective bargaining agreement and striking it down; reinstating any employee, who was discharged pursuant to the violative testing program, to his former position with back pay and benefits; and expunging the employee's record of any disciplinary incidents which occurred pursuant to the violative testing program.

The Plaintiff argues, however, that all of the aforementioned remedies would not redress the damage to the employee's reputation resulting from disciplinary action wrongly taken against the employee. Although the Plaintiff acknowledges that there are measures in place which would protect the employee from the improper disclosure of confidential information, the Plaintiff feels that they might not work. Based upon the assumption that the confidentiality measures will not work, the President of the Union predicted a number of apocalyptic consequences for the employee who is branded alcohol or drug dependent, ranging from divorce to excommunication. In light of the possible harm which might befall an employee who is so labeled, the Plaintiff argues that the arbitrator's decision would be essentially meaningless.

The Court finds these possible consequences to be purely speculative and unsupported by relevant evidence or even logic. There has been no probative evidence presented which would assail the integrity of the testing procedures in place at the Fort Worth Division and seven other General Dynamic's divisions. Although it is conceivable that in the interim an employee could falsely test positive, irreparable injury is no more threatened in the present context than in any other minor dispute involving discharge or discipline of an employee. *See Allied Pilots Ass'n v. American Airlines, Inc.,* 898 F.2d at 465–466. Accordingly, the Court finds that the Plaintiff has failed to show irreparable harm.

### III. CONCLUSION

Although there is some potential of harm or injury which might befall the employees of the Defendant's Fort Worth Division, the injury is not so grave as to render meaningless any future arbitrator's decision in the Plaintiff's favor. As for the potential threat of humiliation or injury to reputation, it is tenuous and speculative and therefore cannot be defined as irreparable injury for purposes of the Norris–LaGuardia Act and established precedent.

An Order in conformance with the Memorandum Opinion shall issue this day.

Further, the Court expresses no opinion as to the underlying merits of the Plaintiff's dispute with General Dynamics.

### ORDER

Commensurate with the Memorandum Opinion issued this day, the Court finds that the Plaintiff has failed to show a threat of injury or harm so grave as to render meaningless any future arbitrator's decision in the Plaintiff's favor. Therefore, the Court finds that it is without jurisdiction pursuant to the Norris–LaGuardia Act, 29 U.S.C. § 113(c), to enter a preliminary injunction in this case.

Accordingly, the Plaintiff's Motion for Preliminary Injunction is in all things DENIED.

IT IS SO ORDERED.